S. M. DAMON *v.* C. M. HYDE and J. O. CARTER.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED JULY 6, 1897. DECIDED SEPTEMBER 16, 1897.

FREAR AND WHITING, JJ., AND CIRCUIT JUDGE PERRY, IN PLACE OF JUDD, C.J., ABSENT.

Where there is no statute regulating the resignation of a trustee, a person, after the acceptance of a trust, cannot renounce and resign the office of trustee merely of his own act and caprice. He can only be discharged (a) by a decree of court, (b) by force of a provision in the deed or instrument creating the trust, or (c) by consent of all parties interested.

The acceptance of the resignation of the trustee should not be made final by the decree of the court until after an accounting and the appointment of a new trustee and a decree transferring and conveying the estate of the trust to a new trustee.

OPINION OF THE COURT BY WHITING, J.

Petitioner by his bill in equity prays to be allowed to resign as trustee of a trust estate.

The parties hereto in conjunction with two others are under and by virtue of the will of Bernice Pauahi Bishop, trustees of the estate of deceased.

Clause fourteen of the will reads as follows:

"I appoint my husband, Charles R. Bishop, Samuel M. Damon, Charles M. Hyde, Charles M. Cooke, and William O. Smith, all of Honolulu, to be my trustees to carry into effect the trusts above specified. I direct that a majority of my said trustees may act in all cases, and may convey real estate, and perform all of the duties and powers hereby conferred; but three of them at least must join in all acts. I further direct that the number of my said trustees shall be kept at five; and that vacancies shall be filled by the choice of a majority of the Justices of the Supreme Court, the selection to be made from persons of the Protestant religion."

Charles R. Bishop is now a resident of San Francisco, California, and absent from the Hawaiian Islands, W. O. Smith resigned and J. O. Carter was appointed in his place, C. M. Cooke resigned and W. F. Allen was appointed in his place and at the date of the petition was absent in Japan.

S. M. Damon, the petitioner, prays that, by decree of court, he may resign his trust—for the reason that he is obliged to leave the Hawaiian Islands to go to England in an official capacity, and cannot at present state how long his absence may be protracted.

Two of the five trustees were at the time absent from the Republic in foreign countries, leaving only S. M. Damon, C. M. Hyde and J. O. Carter in Honolulu.

The respondents contested the cause and claimed that S. M. Damon would only be temporarily absent, and that such absence if plaintiff continued to hold his trusteeship would not greatly discommode nor embarrass the work of the trust; that there was a complete staff of assistants to do the regular work and that there was no anticipation of any action necessary to be taken by a majority of trustees before the return of one of the absent trustees. And further that the resignation of plaintiff would be a serious detriment and inconvenience to the trust.

The trust embraces objects of a semi-public nature such as

the Kamehameha schools for native Hawaiians, and the property is large and valuable.

The Circuit Judge found for the plaintiff and a decree allowing the resignation was granted.

The petitioner, S. M. Damon, in his evidence gives as his reason for resigning the trust, that he is to be absent from the islands for a long period and that there would not remain a quorum of the trustees in Honolulu, and there must be at least three trustees to join in any act; that the property is of so much value and so extensive, and with so much at stake connected with the schools and Museum and the landed interests, it is of paramount importance that a full board of trustees should be on the ground to meet any cases that might arise. An important suit is anticipated in connection with the Queen Emma estate and known as the Rooke property in which the Bishop estate has an interest. Should such a suit be brought it is necessary that a full board should be here to act and advise prior to the suit being inaugurated. There are other interests which need to be looked after by a full board. There will be constant points arising relative to the management of so large a property. Many matters connected with the conduct of the schools, the election of teachers, the curriculum, and the daily need of an authoritative body to whom to report. The trustees have committees connected with each of these works, finance committees, educational committees, but the action of those committees is only advisory: it can only be permanent when a quorum is present, and I feel and have felt for some time that the property and the estate is too valuable to be left in the hands of any two men, no matter how competent or how honest and energetic they may be in the affairs of the estate. They are not competent to carry on the business of such an immense property, to my mind satisfactorily. The value of the property I do not feel it safe to leave in the hands of any two men, when they are not a properly constituted quorum to act for the estate. That is the main reason, the paramount reason as to why I wish to resign.

The respondents put in evidence tending to controvert the

reasons given by petitioner and tending to show that the trust would not be injured by Damon's absence.

The Circuit Judge found that there was sufficient reason for Damon's resigning, and says: "It seems to me that where a trustee has shown a desire to resign and has stated good reasons, the burden is then shifted to the other side. You must show some reason why he should not be allowed to resign. The mere fact that he accepted the trust will not justify the court in compelling him to remain a trustee all his life. If he shows reasons why he desires to resign, and requests the court to be allowed to resign, the court will not decline that request unless something is shown why it would be improper for him to resign. The court cannot keep Mr. Damon in the country. Complications could arise in his absence, being a trustee, the same as could arise if he resigned the trust. It does not put the trustees in any better position. For all purposes he is not capable of acting. They would be under the same disadvantages as if he were no longer a trustee."

We have no statute regulating the resignation of trustees, but such matters are within the jurisdiction of our courts of equity, which jurisdiction is conferred on our Circuit Judges.

There are several ways for a trustee, who has accepted a trust, to resign and be discharged from the trust, but he cannot merely of his own caprice and act renounce the trust.

Gibson, C. J., says in *Ross v. Barclay*, 18 Pa. St. 184, "A trustee cannot renounce. It is unnecessary to quote any authority for that. He can only be discharged by the decree of a court of equity (whose power in this estate is vested in the Common Pleas); by force of a provision in the deed, or by consent of all parties interested."

*Cruger v. Halliday*, 11 Paige 314; 319.
Lewin on Trusts, 670-673.
Perry on Trusts, Sec. 274.

In *Green v. Blackwell*, 31 N. J. Eq. 37, complainant was

one of two trustees of a trust estate and upon a very large addition being made to the trust property, declined to act further as trustee and applied to the court for his discharge, which was opposed by the respondents on the ground that he showed no sufficient reason therefor. The court held that he was undoubtedly at liberty to apply to the court for his release on the sole ground of unwillingness to act, and that the greatly increased amount of the estate devolved upon the trustee, and which it would be incumbent on him to manage if he continues in the office, is a sufficient ground for relieving him if he desires it.

In the *Matter of Jones,* 4 Sand Ch. 615, the petitioner, a trustee under an express trust, prayed the court that his account might be passed, a new trustee appointed and petitioner discharged from the trust by order of the court. The beneficiaries did not object to the substitution of a new trustee, but insisted it should be at the expense of the petitioner. The Vice-Chancellor said "that there appeared to be no cause for the resignation of the trustee other than his own wish to be relieved from the duties of the trust. Having once undertaken those duties, he ought not now to decline them so as to subject the trust estate to any loss or expense." An order for discharge of the trustee and appointment of a new trustee on terms of costs and accounting was granted.

The petitioner, Damon, has applied to a court of equity, and obtained a decree allowing his resignation, and we are of opinion that the decree is sustained by the evidence and good and sufficient grounds and reasons given for the resignation.

But however it does not appear that the Circuit Judge has gone far enough into the matter; for in connection with the resignation of a trustee, there should be at least an accounting, an appointment of a new trustee and a decree transferring and conveying the estate of the trust to the new trustee, and until this was done his discharge could not be complete; and for these reasons we remit the case to the Circuit Judge to be reopened or such further proceedings to be had as may be necessary.

As to the point now raised by respondents that C. R. Bishop who is resident in San Francisco, California, and W. F. Allen who is absent temporarily from the Hawaiian Islands of his own volition, should be made parties, we are of opinion that they are out of jurisdiction of the court and of the trust and while so absent are not necessary, though proper, parties to a suit of this nature, and their absence cannot be permitted to so tie up the administration of the trust as to prevent the court proceeding in a suit for the resignation of a co-trustee.

The Attorney-General, though presumably the proper person to represent those who have a public interest in a trust of this nature, is not a necessary party although it is always open for him to intervene, if such interests are affected.

Case remanded.

*Paul Neumann* for plaintiff.

*Kinney & Ballou* for defendants.

